UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| MAGGIE JENKINS, *ET AL.* | ) | |
| | ) | |
| v. | ) | NO. 2:05-CV-74 |
| | ) | |
| SARA LEE CORP., *ET AL.* | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Maggie Jenkins' Fair Labor Standards Act ("FLSA") complaint[1] is before the Court on Defendant Sara Lee Corporation's ("Sara Lee") Motion for Summary Judgment, [Doc. 13].

I.    **FACTUAL BACKGROUND**

Plaintiff Jenkins began her employment with Sara Lee on October 24, 2002, as a bakery store clerk, and she was hired to provide vacation relief to other employees of Sara Lee's various northeast Tennessee locations, particularly in the Tri-Cities area. Plaintiff Jenkins was covered by the Collective Bargaining Agreement

---

[1]Plaintiff Maggie Jenkins alleged other causes of actions against the defendants, and Plaintiffs Jennifer Hovatter and George Whistine also alleged causes of actions against the defendants. Defendant Sara Lee Corporation moved for summary judgment on all counts against all plaintiffs. Subsequent to the filing of the Summary Judgment Motion, the parties filed a Stipulation of Partial Dismissal, [Doc. 40], stating that Plaintiffs Hovatter and Whistine's causes of action had been resolved and, therefore, dismissed with prejudice.
    Also, in Plaintiff Jenkins' Response to the Summary Judgment Motion, [Doc. 25], Plaintiff Jenkins abandoned all causes of action except her FLSA overtime action. Therefore, it is the only cause remaining. As such, it is the only cause this Memorandum Opinion and Order will address.

("CBA") between Sara Lee and the Bakery, Confectionery, Tobacco Workers' & Grain Millers' International Union Local No. 25. Her immediate supervisor was Bakery Store Supervisor Jerry McFall.

In November 2002, Plaintiff Jenkins asked the Kingsport, Tennessee, store manager, Sandra Childress, how Sara Lee "got away with" not paying her and other employees overtime compensation. Ms. Childress had no answer, and in January 2003, after Plaintiff Jenkins completed her initial 90-day "probationary period," she asked Mr. McFall why she was not being paid for her overtime hours. Mr. McFall informed Plaintiff Jenkins that Sara Lee did not pay overtime, told her not to get the union involved, instructed her to record only 40 hours on her weekly time sheet,[2] even if she worked more than 40 hours, and told her that Sara Lee would have to close stores if she and other employees reported overtime hours.[3]

Therefore, Plaintiff Jenkins only recorded that she worked 40 hours on her weekly time sheets, and her time sheets reflect only 40 hours of work. Regarding the time sheets, the employees recorded their daily times and verified and signed the cards at the end of each workweek. Each time sheet included the statement, "REMEMBER" your pay is figured from this card, so be sure it is correct." After

---

[2] Plaintiffs Hovatter and Whistine also testified in their depositions that Mr. McFall instructed them not to record overtime hours on their weekly time sheets.

[3] Sara Lee closed approximately 17 stores from 1998 to 2004.

signing the sheet, the employees then gave the sheets to Mr. McFall, who sent the sheets to the payroll office.[4] Plaintiff Jenkins alleged that at times Mr. McFall "physically altered" the time sheets, and on one occasion, he destroyed Plaintiff Hovatter's sheet because it reflected hours over her allotted 29 hours, as a part-time employee.

Plaintiff Jenkins' overtime hours increased in October 2003 when seven employees were reduced from full-time to part-time status. In Plaintiff Jenkins' affidavit[5], she explained her daily routine, which, according to her, was over eight hours. She would arrive at a store at 9:00 a. m. and complete various tasks until she closed her register when the store closed at 5:30 or 6:00 p.m. Mr. McFall instructed the employees to close the registers right before or by closing time, so the corporate office would not see the overtime hours they were working on the register print out sheet. After closing the register, Plaintiff Jenkins compiled the daily register report, the outgoing bills for the day, and the electronic transfer information. Plaintiff Jenkins had to drive to a local business to exchange the cash from the register for a money order, return to the store, and complete the financial data summary. She had

---

[4]Plaintiff Jenkins testified at her deposition that after Mr. McFall was no longer the supervisor, the employees would fax their time sheets directly to another office. The record is unclear on the location of this office and unclear how long this process continued.

[5]Upon defendants' motion, portions of Plaintiff Jenkins' affidavit were stricken from the record. Thus, this Court did not rely on any of the stricken information.

to restock shelves for the store's opening the next morning.  Plaintiff Jenkins stated that the "normal closing operations" took one to two hours.  She then had to drive to Sara Lee's Johnson City Commissary to deliver the money order and financial information because another employee would take that information every evening to the Knoxville, Tennessee office.[6]  Plaintiff Jenkins stated that the Bristol, Virginia and Bristol, Tennessee stores were many miles away from the Commissary, which added significantly more time to her workday.

Plaintiff Jenkins again complained to Mr. McFall concerning her overtime hours, and he told her that if she continued to complain, he would have to reduce the part-time employees' hours again, causing them to lose their medical insurance.

In May 2004, Sara Lee implemented the completion of a Daily Deposit and Register Reading Report.  The employee recorded the daily financial information onto the report, and in box number 37, the employee recorded the number of hours he or she worked that day.[7]  Plaintiff Jenkins attached 10 reports showing over eight

---

[6]Plaintiff Hovatter testified to a similar closing procedure in her deposition, stating, in essence, that this procedure caused her to work overtime hours.

[7]Mr. McFall and Ms. Childress stated in their affidavits that the employee was to record the total number of hours worked by all employees at that location for that specific day.

4

hours listed in box number 37.[8]

At the October 5, 2004 union meeting, Plaintiff Jenkins complained about not being paid for her overtime hours. She stated that she would seek outside help if the union failed to act on her behalf. The union never filed a complaint.

On November 6, 2004, Mr. McFall was terminated from his employment upon the elimination of his Bakery Store Supervisor position. Upon his termination, Janet Ellzy became Plaintiff Jenkins' immediate supervisor. Also after Mr. McFall's termination, according to Plaintiff Jenkins, she assumed many of Mr. McFall's former duties and began to work even more overtime hours.

Also in November 2004, Plaintiff Jenkins complained to Ms. Ellzy about not being paid for her overtime hours and informed her how Mr. McFall did not allow employees to record their overtime hours on their time sheets. Ms. Ellzy informed Plaintiff Jenkins in December 2004 to keep her overtime hours to a minimum because overtime compensation was not in Sara Lee's budget. She also offered Plaintiff Jenkins an extra week of vacation time. Plaintiff Jenkins testified at her deposition

---

[8]Plaintiff supplied these documents as well as two boxes of other documents to defendants' counsel on January 23, 2007, the morning of her deposition. She testified at her deposition that the "daily register reports, daily paperwork, [and] the printouts for money deposits," as well as the "daily checkup sheet[s]" contained in the boxes of documents would prove the amount of overtime hours she worked. She also testified that Sara Lee's telephone records and facsimile journals would so indicate.
    The defendants complain about the timing of the production and complain that none of this information was produced in response to their first set of interrogatories and request for production of documents sent in April 2007. Plaintiff Jenkins responded by stating that all of the proof she would offer was contained in the boxes of materials she produced at her deposition.

5

that once Ms. Ellzy became her supervisor, she started receiving overtime pay "[o]n a regular basis."

In February 2005, Thomas Wolfe became Plaintiff Jenkins' supervisor for a short period of time. Plaintiff Jenkins complained to him about not receiving overtime pay, and he never addressed the complaints. Plaintiff Jenkins also called Sara Lee's resource toll free telephone number to complain about unpaid overtime compensation. She also complained to the Human Resource Managers Jason Childs and Julie Blakenship in April 2005 and July 2005. In addition, Plaintiff Jenkins continued to complain to Ms. Ellzy, who eventually replied, that if she did not like the situation, she should seek other employment. Plaintiff Jenkins' employment with Sara Lee ended in August 2005.

Plaintiff Jenkins did not keep a personal log or diary listing the weeks she worked in excess of 40 hours. She stated in her affidavit that she is basing her claims for unpaid overtime on "the hours reflected on the various reports and on [her] memory of the time it routinely took [her] to 'close out' a store, do the paperwork, and then deliver the reports to the Johnson City depot each weekday night." More specifically, she claims that in January 2003, she was not paid for 30 hours of overtime at a rate of $13.25 per hour. The remainder of the specific claims have been stricken from the record. *See* [Doc. 34]. In addition, the Complaint alleges that she

6

was not paid for "as many as 24.5 hours per week of overtime" from "January 2003 to present."

II. **STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine issue of material fact." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of proving that no material facts exist, and the court must draw all inferences in a light most favorable to the non-moving party. A court may grant summary judgment when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial. *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (citations omitted).

In accordance with long standing summary judgment principles, this Court must construe the evidence in this record most favorably for the plaintiff because the plaintiff is the litigant opposing summary judgment. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *Scott v. Clay County*, 205 F.3d 867, 871 (6th Cir.2000). As explained by the Sixth Circuit in *Scott v. Clay County*,

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not

> those of a judge. . . . <u>The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor</u>.

205 F.3d at 871 (emphasis added).

III. **DISCUSSION**

　A. CBA's Grievance and Arbitration Procedure

First, Defendant Sara Lee states that Plaintiff Jenkins' failure to use the CBA's grievance and arbitration procedure "is one of [d]efendant's bases for seeking summary judgment." Plaintiff Jenkins did inform the union of her complaint at the October 5, 2004 meeting. However, the union never filed a complaint on her behalf. The record is unclear if she followed the correct procedure; however, this is irrelevant because "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981). Moreover, "FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement." *Id*. Therefore, summary judgment will not be granted on this basis.

　B. Prima Facie Case for Unpaid Overtime Compensation

Second, Defendant Sara Lee argues that Plaintiff Jenkins has failed to make a prima facie case for unpaid overtime compensation. More specifically, Sara Lee contends that Plaintiff Jenkins failed to show performance of work not properly

compensated under the FLSA and the amount of the liability by a just and reasonable inference. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

The FLSA requires employers to pay employees one and one-half times the employee's regular rate for each hour, or fraction thereof, for work in excess of 40 hours per workweek. 29 U.S.C. § 207 (2008). An employee has a cause of action under section 216(b) for unpaid overtime compensation if the employer violated section 207, and the employee may recoup the wage, liquidated damages, attorneys fees, and costs. 29 U.S.C. § 207. One element the plaintiff must prove to recover is the overtime hours worked without compensation, and he or she must show the amount and extent of his or her overtime work as a matter of just and reasonable inference. *Anderson*, 328 U.S. at 687. In addition, pursuant to 29 U.S.C. § 211(c), an employer is required to make and keep records of employees' wages and hours, in addition to other employment conditions and practices. 29. U.S.C. § 211(c).

The plaintiff generally has the burden of proving that his or her employer violated the FLSA. However, as the Court explained in *Anderson v. Mt. Clemens Pottery Company*,

> [W]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then

> shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id*. at 687-88.

Here, Defendant Sara Lee contends that plaintiff has not carried her burden, citing the unpublished District of Utah opinion, *Noorda v. Chaparral Fire Protection, Inc.*, 2005 WL 783072 (D. Utah 2005), where the plaintiff provided "[m]ere estimates of hours of work performed, without more." *Id*. at *5. The district court further stated that the plaintiff did not present "identifiable facts that meaningfully support[ed] his claims." *Id*.

Plaintiff Jenkins cites two Sixth Circuit opinions supporting her position that she meets her burden. First, in *United States Department of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775 (6th Cir. 1995), the employer instructed the employees to only record their scheduled work hours on their time sheets. *Id*. at 778. Even when employees recorded their actual hours, the employer only paid them for their scheduled shift hours. *Id*. The Sixth Circuit found that the evidence demonstrated that the employer failed to keep accurate records of the "actual hours worked by the employees," and that the district court properly shifted the burden to the defendants,

despite the defendants' argument that it was the employees' responsibilities to record their hours. *Id*. at 779. In addition, the Sixth Circuit affirmed the district court's finding that the employees performed an average of one-half hour per day in overtime of pre-shift or post-shift work based upon various employees' testimonies. *Id*.

Second, in *Herman v. Palo Group Foster Home, Inc*., 183 F.3d 468 (6th Cir. 1999), the Sixth Circuit affirmed the district court's shifting of the burden to the defendant because of inadequate record keeping because the defendant did not record the hours actually worked by the employees. *Id*. at 472. In particular, the defendant failed to record the hours that the employees, who worked overnight shifts, were on duty but allowed to sleep. *Id*. In addition, evidence showed that the employees' sleep was often interrupted to perform work duties, they were required to stay late, and they often did not receive their entire meal time. *Id*. at 473.

The case at hand is similar to the cases cited by Plaintiff Jenkins, particularly *Cole Enterprises*. As in *Cole Enterprises*, the record shows through deposition testimony of Plaintiffs Jenkins, Hovatter, and Whistine that Mr. McFall instructed the employees to only record their scheduled hours instead of the hours they actually worked. Thus, the records kept by Defendant Sara Lee, *i.e.* the time sheets, according to the plaintiff, are not accurate and, thus, the burden should shift to Sara Lee. *See Cole Enterprises, Inc.*, 62 F.3d at 779. In addition, based on Plaintiff

Hovatter's deposition testimony, Plaintiff Jenkins' deposition testimony and affidavit, and the Daily Deposit and Register Reading Reports, the record shows by a "just and reasonable inference" that hours worked per day exceeded eight hours, despite the affidavits of Mr. McFall and Ms. Childress, arguing to the contrary. Furthermore, Sara Lee has presented no evidence of the precise amount of hours actually worked per workweek to rebut Plaintiff Jenkins' inference, especially considering evidence in the record that the time sheets are inaccurate. Thus, this Court FINDS that a genuine issue of material fact exists as to whether Plaintiff Jenkins is due overtime compensation.

## IV. **CUT OFF DATE OF PLAINTIFF'S CLAIM**

Defendant Sara Lee argues that because Plaintiff Jenkins testified in her deposition that when Ms. Ellzy replaced Mr. McFall as her immediate supervisor in November 2004, she began receiving overtime compensation "[o]n a regular basis," Plaintiff Jenkins' claim should be cut off as of this date.

To be sure, Plaintiff Jenkins testified as Defendant Sara Lee describes; however, in her affidavit, she states that she continued to complain on several occasions and to several different people for not receiving overtime compensation after Ms. Ellzy became her supervisor. Defendant Sara Lee is welcomed to cross-examine Plaintiff Jenkins at trial concerning this issue, but this Court FINDS that it

12

is an issue for trial, as the record has presented adequate proof to survive summary judgment.

## V. **CONCLUSION**

Accordingly, for the reasons set forth above, Defendant Sara Lee's Motion for Summary Judgment, [Doc. 13], is **DENIED**. Pursuant to LR16.4 of the Local Rules of the United States District Court for the Eastern District of Tennessee, it is hereby **ORDERED** that this case proceed to mediation on this remaining claim within the next sixty (60) days, and it is further **ORDERED** that all existing deadlines, the final pretrial conference, and the trial of this cause are **CANCELLED**. The parties shall report on the results of mediation on or before May 12, 2008. If mediation has been unsuccessful, this case will be reassigned for trial at that time.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
